UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

EDICER PEREZ,

                 Plaintiff,

       v.                            10-cv-00337
                                   (WGY)
MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

                 Defendant.

_____

WILLIAM G. YOUNG, United States District Judge[1]

## DECISION and ORDER

## I.    INTRODUCTION

Edicer Perez ("Perez") brings this action pursuant to

section 205(g) of the Social Security Act, 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner

of Social Security (the "Commissioner").  Perez challenges the

decision of the Administrative Law Judge (the "hearing officer")

denying him Social Security Disability Insurance ("SSDI")

benefits and Supplemental Security Income ("SSI") benefits.

Perez requests that this Court grant his motion for judgment on

the pleadings and grant his application for SSDI and SSI benefits

---

[1] Of the District of Massachusetts, sitting by designation.

1

or remand this case to the Commissioner for further proceedings. Compl., ECF No. 1; Pl.'s Br. ("Perez's Mem."), ECF No. 15. The Commissioner requests that this Court affirm the hearing officer's decision and grant his motion for judgment on the pleadings. Def.'s Br. Pursuant General Order No. 18 ("Def.'s Mem."), ECF No. 16.

### A. Procedural Posture

On June 14, 2007, Perez filed a Title II application for SSDI benefits and a Title XVI application for SSI benefits, alleging disability for a period beginning June 11, 2007. Admin. R. at 10, ECF No. 8. Perez's application was initially denied on November 15, 2007, id. at 40-46, and Perez filed a timely written request for a hearing by a hearing officer on December 26, 2007, id. at 50-51. Perez testified at a hearing held on November 5, 2009, and was represented by an attorney. Id. at 10. The hearing officer issued an unfavorable decision on November 18, 2009. Id. at 15. Perez subsequently filed a timely request for review, id. at 5, which was denied by the Appeals Council on March 9, 2010, id. at 1-4.

On March 23, 2010, Perez filed the present action with this Court to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Compl. 1. The government filed an answer, Answer, ECF No. 7, and both sides filed briefs, Perez's Mem.; Def.'s Mem. On February 3, 2012, the case was reassigned to this

Court.  Reassignment Order, ECF No. 18.

**B.  Factual Background**

Perez was born in 1957.  Admin. R. at 79.  He smokes a pack
of cigarettes per week, uses alcohol, and has no history of drug
use.  Id. at 237.  Perez has a twelfth-grade education from
Puerto Rico and received some vocational training in carpentry in
New York.  Id. at 23.  He is able to read and write English.  Id.
His prior employment includes some labor work, laundry, painting,
and refinishing and polishing work.  Id. at 99.  Perez has a
history of numerous physical impairments.  Id. at 12-14.

**1.  Physical Impairments**

Perez reported to Wilson Memorial Hospital and saw Dr. Sabah
S. Toma on June 11, 2007, complaining of headaches and dizziness.
Id. at 175.  He underwent a noncontrast computed tomography scan
of his head and paranasal sinuses, which revealed minimal
mucoperiosteal thickening and a deviated nasal septum.  Id. at
195.

On June 21, 2007, Perez arrived at Our Lady of Lourdes
Memorial Hospital with left upper extremity severe weakness and
tingling, and left lower extremity weakness with a left-sided
facial droop.  Id. at 237.  Dr. Victoria M. Mirza ("Dr. Mirza"),
Perez's attending physician, noted that Perez had a history of
deep venous thrombosis, pulmonary embolism, migraines, and
nicotine dependence.  Id. at 242.  Dr. Mirza further noted that

Perez was noncompliant with his Coumadin therapy treating the deep venous thrombosis. Id. at 245. Perez underwent a magnetic resonance imaging test, which revealed that he had suffered from acute right brain ischemic stroke. Id. at 238. Perez was diagnosed with left spastic hemiparesis and right middle cerebral artery infarct. Id. at 244. Perez's condition subsequently stabilized, and he was cleared medically to return home and was instructed to attend outpatient rehabilitation therapy. Id. at 236.

On October 1, 2007, Perez saw Dr. Jamshid Sheikh ("Dr. Sheikh"), for a consultative exam on a referral from the Division of Disability Determination. Id. at 214. Perez reported that his condition had improved tremendously since his stroke and that he was able to cook, clean, do laundry, and shop, but he continued having difficulty lifting or holding heavier objects. Id. at 214-15. Dr. Sheikh noted that Perez appeared to be in no acute distress, his gait was normal, he could walk on his toes and heels, and he could complete a full squat, although he did use a cane for balance when climbing stairs. Id. at 215.

On August 7, 2008, Perez saw Dr. Meng Zhao ("Dr. Zhao"), complaining of pain in the right ankle. Id. at 281. Perez underwent an x-ray test, which revealed a trimalleolar fracture dislocation of the right ankle. Id. at 280. Dr. Michael McClure ("Dr. McClure") subsequently performed an open reduction and

internal fixation procedure on Perez's right ankle.  <u>Id.</u> at 282.

Perez attended several post-surgery follow-up examinations with

Dr. Zhao and Dr. McClure between August 29, 2008, and October 27,

2008.  <u>Id.</u> at 273-77.  During a checkup on January 29, 2009, Dr.

Zhao noted an edema on the left leg, very subtle slurred speech,

and weakened left side.  <u>Id.</u> at 332, 337.  Dr. Zhao also noted

that Perez was alert and oriented, and that his balance, gait,

and coordination were intact.[2]  <u>Id.</u> at 337.

## 2.  Testimony

On November 5, 2009, Perez attended a hearing regarding his

SSDI and SSI benefits.  <u>Id.</u> at 19.  Perez described his

education, vocational training, and prior work history.  <u>Id.</u> at

23-24.  He described his physical pain, explaining its location

and intensity.  <u>Id.</u> at 24-37.  He described the clotting problem

in his leg, the ankle break, and the swelling he experiences in

both legs, which limits his ability to walk or stand for extended

periods of time.  <u>Id.</u> at 24-29.  He explained that he has

weakness in the extremities on the left side of his body, memory

loss, and migraines as a result of the stroke he suffered in

2007.  <u>Id.</u> at 30.  He stated that he needs to lay down and rest

---

[2] The record and the hearing officer's decision also contain
references to visits by Perez to doctors and other medical
professionals not specifically mentioned herein.  <u>See</u> <u>id.</u> 174-96.
These records contain medical history and evaluations consistent
with those taken by the medical professionals discussed
previously.  <u>See</u> <u>id.</u>

for most of the day after experiencing a migraine headache, id. at 33, and that he suffers from these episodes approximately twice a week, id. at 35. He also stated that he can cook, clean, and do grocery shopping. Id. at 31. He stated that he is able to lift fifteen to twenty pounds, has no problems bending over, and can walk a quarter mile, provided he rests periodically. Id. at 32.

He explained that he returned to work for a half day after recovering from the ischemic stroke, but was sent home because he could not complete the tasks required of him. Id. at 25. He subsequently spent some time looking for work but was unsuccessful. Id.

## II. LEGAL STANDARD

Federal district courts "have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); Laven v. Astrue, No. 10-CV-01360(NPM), 2011 WL 6318360, at *3 (N.D.N.Y. Dec. 15, 2011) (McCurn, J.).

### A. Standard of Review

Federal district courts exercise the same standard of review for social security benefits as do the courts of appeals. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Rivera v.

Sullivan, 923 F.2d 964, 967 (2d Cir. 1991)). In general, the factual findings of the hearing officer "are conclusive unless they are not supported by substantial evidence." Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).

Legal decisions are reviewed de novo, and "[w]here there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence." Whipple v. Astrue, No. 5:08-CV-1356(GTS/EDEP), 2011 WL 1299352, at *5 (N.D.N.Y. Mar. 8, 2011) (Peebles, M.J.) (citing Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.)).

**B.    Social Security Disability Standard**

A claimant is disabled for the purposes of SSDI and SSI eligibility if he is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Petrie v. Astrue, 412 F.

App'x 401, 404 (2d Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A))
(internal quotation marks omitted).

The Social Security Administration has promulgated a
five-step sequential evaluation process to determine whether a
claimant is disabled. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. The
hearing officer must determine: (1) whether the claimant is
engaged in substantial gainful activity; (2) whether the claimant
has a severe impairment; (3) whether the impairment meets or
medically equals an impairment listed under 20 C.F.R. Part 404,
Subpart P, Appendix 1, and meets the duration requirement; (4)
whether the claimant has the residual functional capacity to
perform his past relevant work; and (5) whether the impairment
prevents the claimant from doing any other work, considering the
claimant's age, education, and work experience. <u>Id.</u>

The claimant bears the burden of proof on the first four
steps, while the Commissioner bears the burden on the last step.
<u>Burgess</u> v. <u>Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008). The steps
ought be followed in order. 20 C.F.R. §§ 404.1520(a),
416.920(a)(4).

## III.   THE HEARING OFFICER'S DECISION

The hearing officer first determined that Perez had not
engaged in substantial gainful activity since June 11, 2007.
Admin. R. at 12. The hearing officer then found that Perez's
status post stroke on the left side, deep venous thrombosis, and

migraine headaches were severe impairments that did not meet or medically equal the impairments listed in the regulations.  <u>Id.</u> at 12-13.  Subsequently, the hearing officer determined that Perez could sit, stand, or walk for six hours in an eight-hour workday, could lift or carry fifty pounds occasionally, and could lift or carry twenty-five pounds frequently.  <u>Id.</u> at 14. Furthermore, the hearing officer assessed Perez's residual functional capacity, finding that Perez could perform the exertional demands of a full range of medium work.  <u>Id.</u>

The hearing officer then determined that Perez was capable of performing his past relevant work as a painter because Perez's relevant work history involved only light to medium work.  <u>Id.</u> at 15.  Accordingly, the hearing officer found that Perez was not disabled from June 11, 2007, through November 18, 2009.  <u>Id.</u>

**IV.  ANALYSIS**

Perez asks this Court to rule that the hearing officer's determination that he is not disabled is not supported by substantial evidence and is not free of legal error.  Perez argues that the hearing officer committed reversible error by (1) failing to consider all severe conditions; (2) failing adequately to support his credibility determination; and (3) failing adequately to support his residual functional capacity determination.  Perez's Mem. 4-10.

**A.  Failure to Consider All Severe Conditions**

At the second step of the sequential evaluation process, the hearing officer is required to determine whether the claimant's impairment or combination of impairments is severe, meaning that the impairments significantly limit the claimant's physical or mental ability to do basic work activities for more than one year. See 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(c); see also id. §§ 404.1521, 416.921 (defining non-severe impairments). The claimant bears the burden of presenting evidence establishing severity. See Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); See also 20 C.F.R. §§ 404.1512(a), 404.1512(c) (stating that "[the claimant] must provide medical evidence showing that [he] ha[s] an impairment(s) and how severe it is during the time [he] say[s] that [he][is] disabled," id. § 404.1512(c)).

This step of the sequential evaluation process "is valid only if applied to screen out de minimis claims." Parker-Grose v. Astrue, No. 11-52-CV, 2012 WL 29319, at *1 (2d Cir. Jan. 6, 2012) (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)) (internal quotation marks omitted). "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting SSR 85-28, 1985 WL 56856, at *3 (1985)).

The hearing officer determined that Perez had the following severe impairments: "status post stroke on the left side, deep vein thrombosis with leg clots, and migraine headaches." Admin. R. at 12. Perez argues that his right ankle fracture is a severe impairment and that the hearing officer's failure to deem it such is clear error of law. Perez's Mem. 5. Perez's contention, however, is without merit because the hearing officer's determination with respect to severe impairments is supported by substantial evidence in the record. Here, the record shows that Perez's right ankle fracture was corrected by surgery on August 8, 2008, shortly after he was diagnosed on August 7, 2008.[3] Admin. R. at 280-83. During a follow-up examination on September 25, 2008, Dr. McClure stated that "[Perez] is doing very well, feels comfortable" and recommended that he continue with partial weight bearing with a brace. Id. at 275. On October 27, 2008, Dr. McClure noted that Perez was able to fully weight bear with a brace. Id. at 273. On January 29, 2009, Perez saw Dr. Zhao, who noted that the right ankle had healed and that Perez had no problems walking. Id. at 336.

To prove sufficiently that an impairment is severe, Perez must show that the impairment has caused functional limitations that precluded him from engaging in any substantial gainful

_____

[3] Perez fractured his ankle more than one year after he filed his June 14, 2007, applications for SSDI benefits and SSI benefits. Admin. R. at 10.

11

activity for one year or more.  See Meadors v. Astrue, 370 F.
App'x 179, 182 (2d Cir. 2010); Rivera v. Harris, 623 F.2d 212,
215 (2d Cir. 1980).  The medical evidence shows that Perez
suffered few functional deficits and was fully able to bear
weight and walk after a period of less than three months.

Accordingly, this Court rules that the hearing officer's
determination with respect to severe impairments is supported by
substantial evidence.

## B.   Failure Adequately to Support the Credibility Determination

In making a credibility determination, the hearing officer
is required to take the claimant's reports of pain and other
limitations into account, 20 C.F.R. § 416.929, but is "not
required to accept the claimant's subjective complaints without
question," Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010).
Rather, the hearing officer "may exercise discretion in weighing
the credibility of the claimant's testimony in light of the other
evidence in the record."  Id. (citing Marcus v. Califano, 615
F.2d 23, 27 (2d Cir. 1979)).

The regulations outline a two-step process for assessing
claims of subjective pain.  Id.  At the first step, the "[hearing
officer] must decide whether the claimant suffers from a
medically determinable impairment that could reasonably be
expected to produce the symptoms alleged."  Id. (citing 20 C.F.R.
§ 404.1529(b)).  If the claimant suffers from such an impairment,

the second step requires the hearing officer to determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." Id. (alterations in original) (quoting 20 C.F.R § 404.1529(a)) (internal quotation marks omitted).

Perez contends that the hearing officer erred by concluding that his testimony concerning the intensity, persistence, and limiting effects of his impairments was not credible. Perez's Mem. 7-9. He claims that the hearing officer did not properly recognize the allegations of leg pain and migraine headaches, and their cumulative effect on his ability to undertake daily living activities. Id. The Court rejects this argument because the hearing officer's credibility determination is supported by substantial evidence. Following the two-step process, the hearing officer found that Perez's medically determinable impairments reasonably could be expected to cause the alleged symptoms. Admin. R. at 14. Perez's assessment, however, of the intensity, persistence, and limiting effects of the symptoms was "not credible to the extent that [it] [was] inconsistent with the . . . residual functional capacity assessment." Id.

The medical record does not corroborate Perez's subjective symptomatology to the extent alleged. Although Perez does suffer from some limitations due to his impairments, the record shows

that Perez's reported activities of daily living include shopping, washing dishes, laundry, taking out the garbage, and occasionally preparing meals. Id. at 128-30. Furthermore, Dr. Sheikh, Dr. McClure, and Dr. Zhao found only minimal limitations during their examinations, which suggests that Perez is fully capable of independently performing his activities of daily living. See id. at 215, 273-77, 288-91.

Thus, in light of the record, this Court rules that the hearing officer's credibility determination was supported by substantial evidence.

### C.  Failure Adequately to Support the Residual Functional Capacity Determination

The final issue is whether the hearing officer erred in making the residual functional capacity determination. Perez's Mem. 1.  The hearing officer's residual functional capacity determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  It is, however, "not require[d] that [the hearing officer] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983); see also Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) (rejecting the proposition that the hearing officer must

explicitly reconcile every shred of conflicting testimony).

In this case, the hearing officer found that Perez "retain[ed] the residual functional capacity to perform the exertional demands of a full range of medium work." Admin. R. at 14. Perez argues that the residual functional capacity determination cannot be sustained because it is the product of numerous errors. Perez's Mem. 9. First, he argues that the hearing officer failed to consider the entire record. Id. Second, Perez contends that the hearing officer erred in failing to find any non-exertional impairments, failing to consider all impairments in combination, and failing to consider the fractured ankle as a severe impairment. Id. at 9-10. Finally, Perez challenges the hearing officer's determination that he could stand or walk for six hours in an eight-hour day. Id. at 10.

As to Perez's first contention, although the hearing officer should fully develop the record, he is not required to discuss all the evidence submitted, and his failure to cite specific evidence does not indicate that it was not considered. Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) (Sharpe, J.); see also Mongeur, 722 F.2d at 1040; Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982); Miles, 645 F.2d at 124. This is especially true when, like here, the record allows the reviewing court to ascertain why the hearing officer did not give weight to a particular piece of evidence. See Mongeur, 722

15

F.2d at 1040.  Although a hearing officer should always discuss a treating physician's record, such an omission is harmless when the information therein does not contradict but rather supports the hearing officer's decision.  See id.  Here, the hearing officer's decision contained ample references to objective medical evidence in the record.  See Admin. R. at 14.  Therefore, Perez's claim that the hearing officer failed properly to consider the entire record must fail.

The Court rejects Perez's remaining arguments because the hearing officer's residual functional capacity determination is supported by substantial evidence.  The hearing officer's determination that Perez retained the residual functional capacity to perform medium work was based largely on Dr. Sheikh's observations.  See id.  Dr. Sheikh noted during a physical examination in October 2007 that Perez was in no acute distress, had a normal gait, and was able to walk on his toes and heels.  Id. at 215.  He noted that Perez could sit, stand, or walk for six hours in an eight-hour day, and could lift or carry fifty pounds occasionally, and twenty-five pounds frequently.  Id. at 219.  He further noted that Perez used a cane as an assistance device but that it was not medically necessary given that Perez's gait was normal without the use of the cane.  Id. at 215.

Although the hearing officer did not expressly cite Dr. Zhao's observations, nothing in the medical record contradicts

the finding that Perez could perform medium work.  Physical examinations conducted by Dr. Zhao from December 2007 to April 2008 were largely normal except for mild left side weakness.  Id. at 289, 292, 296.  Results from a physical examination conducted in January 2009 were normal except for a trace of non-pitting edema in Perez's legs, very subtle slurred speech, and left side weakness.  Id. at 332, 337.  Dr. Zhao also noted that Perez's balance, gait, and coordination were intact.  Id. at 337.

This Court rules that the conclusions of Dr. Sheikh and Dr. Zhao, along with Perez's testimony, provide substantial evidence for the hearing officer to find that Perez retained a residual functional capacity to perform medium work.

## V.    CONCLUSION

Wherefore, for the foregoing reasons, it is hereby

ORDERED that Perez's motion for judgment on the pleadings, ECF No. 15, is DENIED; and it is further

ORDERED that the Commissioner's motion for judgment on the pleadings, ECF No. 16, is GRANTED; and it is further

ORDERED that the hearing officer's decision denying disability benefits is AFFIRMED; and it is further

ORDERED that Perez's complaint, ECF No. 1, is DISMISSED.

**IT IS SO ORDERED.**

Dated: November 30, 2012          /s/ William G. Young
                                  _____
                                  WILLIAM G. YOUNG
                                  U.S. DISTRICT JUDGE